UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

RODNEY MICHAEL COLLIER, ET AL.      CIVIL ACTION NO. 05-0795

versus                               JUDGE STAGG

CITY OF BOSSIER CITY, ET AL.         MAGISTRATE JUDGE HORNSBY

# REPORT AND RECOMMENDATION

**Introduction**

Before the court is a **Motion to Dismiss (Doc. 26)** filed by Defendant Michael S. Szempruch and a **Motion to Amend (Doc. 46)** filed by Plaintiffs. For the reasons that follow, it is recommended that both motions be granted and that all claims against Officer Szempruch be dismissed.

**Summary of the Relevant Allegations**

This lawsuit arises out of a traffic stop in Bossier City, Louisiana. The facts alleged by Plaintiffs, which are taken as true in evaluating Officer Szempruch's Motion to Dismiss, show that Officer Rodney Harris stopped Plaintiff Rodney Collier for an alleged seatbelt violation. Plaintiff told Officer Harris that he (Plaintiff) was wearing his lap belt, but Officer Harris demanded that Plaintiff produce his driver's license, registration and insurance card. Original Complaint, ¶ 22-23. Officer Harris wrote a summons or ticket and began to tell Plaintiff about the court date, at which time Plaintiff used an expletive and told Officer Harris to just let him sign the ticket as he was late for an appointment and had to go. ¶ 25. Officer Harris then took the pen and paper and threw them upon the hood the patrol car and

told Plaintiff that he was going to jail. ¶ 26. Plaintiff was thrown face down on the hood of the car, ¶ 27, while protesting to Officer Harris that he was a heart patient. ¶¶ 28-29. Officer Harris used excessive and unnecessary force. ¶ 29. Officer Harris handcuffed Plaintiff and placed him in the patrol car. ¶ 30.

Emergency Medical Services personnel, along with other officers, began to arrive on the scene. ¶ 31. Plaintiff's blood pressure was high, but EMS and the police refused Plaintiff's requests to contact his cardiologist. ¶ 32.

Plaintiff alleges Officer Szempruch (who filed the pending motion to dismiss) then arrived on the scene and proceeded to "threaten, intimidate, chide, humiliate and harass plaintiff by accusing him of attacking a 'brother officer' and letting plaintiff know how much trouble he was now in and how the officers would show plaintiff how much of a 'tough guy' he really was." ¶ 33. Plaintiff's original complaint alleges that Office Szempruch's conduct set a tone and established an attitude of police disregard for the safety and dignity of its citizens, and it established and projected the "Brotherhood" concept of "protect your own fellow officer– the citizens be damned." ¶ 34. Officer Szempruch's first statements to Officer Harris, after asking if he was okay, included: "Fu** [Plaintiff], I don't give a sh** about him, I'm worried about you." ¶ 34.

The remainder of Plaintiff's complaint includes allegations regarding Officer Harris taking Plaintiff to the Bossier City jail (¶ 39); Officer Harris taking Plaintiff to LSU Medical Center (¶¶ 39-43); Plaintiff's attempts to obtain a videotape of the incident (¶¶ 50-52); and

the injuries suffered by Plaintiff and his wife due to the incident. Plaintiff's complaint sets forth ten counts against the City of Bossier City, Officer Harris and others; however, the only claims that could possibly be asserted against Officer Szempruch based on the factual allegations are the claims for failure to intervene and prevent injury (Count 5) and intentional infliction of emotional distress (included within Counts Seven, Eight and Nine).

In Plaintiff's proposed Second Amended Complaint, Plaintiff adds numerous allegations to attempt to buttress his claims against Officer Szempruch. Those allegations are included in subparagraphs (a) through (m) of a new Paragraph 33, and are summarized below:

a. Szempruch heard the initial radio report made by Officer Harris when Szempruch was on his way to the scene;

b. When Szempruch arrived on the scene, he approached Officer Harris to ask if he was okay, and in response to Harris' comments about Plaintiff's status as a heart patient, Szempruch uttered expletives similar to those summarized above in Paragraph 34 of the original complaint.

c. Szempruch approached Plaintiff while Plaintiff was seated in Harris' patrol car; he entered the car; he got in Plaintiff's face and questioned Plaintiff in a highly abusive and coercive manner; Szempruch verbally assaulted, threatened, intimidated, chided and harassed Plaintiff; Szempruch told Plaintiff that he and the other officers would show Plaintiff just how much of a "tough guy" he really was;

d.     Szempruch threatened to drag Plaintiff out of the car and "stomp [his] ass" on the asphalt;

e.     Plaintiff denied doing anything wrong, but Szempruch "just kept going on and on and on...";

f.     Szempruch went to speak with Harris again, then returned and begin making the same kind of threats, accusations, etc. Szempruch questioned Plaintiff even though Plaintiff had not been advised of his Miranda rights;

g.     Plaintiff was traumatized and terrified by Szempruch;

h.     Szempruch's actions were taken individually and as part of a conspiracy with Harris to punish and retaliate against Plaintiff for his alleged resistence to Harris' unlawful arrest and to subject Plaintiff to additional degradation and injury;

i.     Szempruch acted under color of law and with malice.

j.     The deprivations and violations were all clearly established, and Szempruch is not entitled to qualified immunity;

k.     Szempruch's actions were objectively unreasonable and totally unnecessary;

l.     Szempruch's conduct was extreme and outrageous and amounted to the intentional infliction of emotional distress; and

m.     Szempruch was in a position to intervene and prevent Harris from continuing to violate Plaintiff's rights, but he made no attempt to do so.

**Arguments**

Officer Szempruch's motion to dismiss argues that the civil rights claim against him should be dismissed on the basis of qualified immunity because Plaintiff has not alleged any action by Officer Szempruch that violated Plaintiff's clearly established constitutional rights. According to the motion, Plaintiff has alleged nothing more than that Officer Szempruch was rude and verbally abusive to Plaintiff. With regard to Plaintiff's claim that Officer Szempruch failed to intervene in Officer Harris' actions, the motion notes that, even under Plaintiff's version of the events, Officer Szempruch was not present at the scene when those events allegedly occurred. The motion also seeks dismissal of the state law claim for intentional infliction of emotional distress, arguing that Officer Szempruch's conduct does not rise to the level of conduct required to satisfy the elements defined by the Louisiana Supreme Court for that claim.

In response to the motion to dismiss, Plaintiff filed a motion to amend seeking leave to "clarify and more precisely define the claims and cause of action against Officer Michael S. Szempruch and negate his claim of qualified immunity." Doc. 59, pp. 7-8. The proposed amendment is summarized in paragraphs (a) through (m), above. Plaintiff argues that his claims against Officer Szempruch constitute more than mere allegations of verbal abuse and "do meet the standard of showing that plaintiff's [sic] conduct violated clearly established statutory and constitutional rights of which a reasonable police officer would have knowledge...." Doc. 58, pp. 8-9; Doc. 59, p. 11.

**Standards Applicable to the Pending Motions**

A district court may not dismiss a complaint under Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 78 S.Ct. 99, 101-02 (1957). The complaint must be liberally construed in favor of the plaintiff, and all facts pleaded in the complaint must be taken as true. Lowrey v. Texas A&M Univ. System, 117 F.3d 242, 247 (5th Cir. 1997). However, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." Fernandez-Montes v. Allied Pilots Ass'n., 987 F.2d 278, 284 (5th Cir. 1993).

Before the court can apply this standard to Plaintiff's allegations, the court must first determine whether Plaintiff's motion to amend should be granted. While the proposed Second Amended Complaint does not add any new claims against Officer Szempruch, it does attempt to negate his claim of qualified immunity by describing his alleged acts and omissions in more detail.

Leave to amend a pleading "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). The Fifth Circuit interprets Rule 15 as having a heavy bias in favor of granting leave. "[U]nless there is a substantial reason, such as undue delay, bad faith, dilatory motive, or undue prejudice to the opposing party, the discretion of the district court is not broad enough to permit denial." Martin's Herend Imports v. Diamond & Gem Trading, 195 F.3d 765 (5th Cir. 1999). See also Foman v. Davis, 83 S.Ct. 227 (1962)(refusal to grant leave to

amend "without any justifying reasons is not an exercise of discretion; it is merely abuse of that discretion.")

Rule 15's liberal policy does not mean that a party may ignore the pleading deadline set by the court. Rule 16(b) governs amendments after a scheduling order deadline has expired. The movant must first demonstrates good cause to modify the scheduling order before the more liberal standard of Rule 15(a) will apply to the district court's decision to grant or deny leave. S&W Enterprises, L.L.C. v. SouthTrust Bank of Alabama, NA, 315 F.3d 533, 536 (5th Cir. 2003). The S&W Enterprises decision explained that the appellate court will look to four factors when reviewing a trial court's decision of a post-deadline motion for leave to amend: (1) the movant's explanation for his failure to timely move for leave; (2) the importance of the proposed amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice. Accordingly, it makes sense for the district court to consider those factors when making its decision. That decision is then reviewed only for abuse of discretion, and the Fifth Circuit has observed: "We often have affirmed denials of motions to amend when the motions have been untimely filed." Avatar v. Chevron, 933 F.2d 314, 321 (5th Cir. 1991).

Leave to amend may also be denied if the proposed amendment is futile. Martin's Herend Imports, Inc., 195 F.3d at 771. While the Fifth Circuit has not specifically defined "futility" in this context, it has joined its sister circuits that have interpreted it to mean that the amended complaint would fail to state a claim upon which relief could be granted.

Stripling v. Jordan Production Co., 234 F.3d 863, 873 (5th Cir. 2000).

**Analysis**

    **Leave to Amend Should Be Granted**

At the March 21, 2006 scheduling conference, the court set a deadline of April 21, 2006 for any amendments to pleadings. On October 31, 2006, Plaintiffs filed a contested motion for a ninety day extension of certain pretrial deadlines. In their motion, Plaintiffs did not seek an extension of time for filing amendments to pleadings. Because the court could not accommodate the requested extension while maintaining the pretrial conference and trial dates, the court vacated the scheduling order and continued all *unexpired* deadlines. Doc. 39. By the time that order was issued, the deadline for amendments to pleadings had long expired.

Plaintiff's motion for leave to amend contains nothing that comes close to a showing of good cause for the untimely amendment. The amendment was obviously precipitated by Officer Szempruch's motion to dismiss, and the primary purpose of the amendment is to defeat the officer's claim of qualified immunity. Plaintiffs candidly admits as much. Doc. 59, pp. 7-8. It is also clear that the facts alleged in the amendment were known to Plaintiffs at the time they filed their original lawsuit, and there is no explanation at all for why Plaintiffs did not include these more detailed descriptions of the alleged events when they filed suit originally. These timeliness concerns are tempered somewhat by the fact that the trial date has been continued without date and discovery is still on-going.

There are also valid concerns about the futility of proposed amendment. Even accepting Plaintiff's new allegations as true, the proposed amendment adds nothing more than some additional detail and colorful descriptions of Officer Szempruch's alleged acts and omissions. Even as amended, the allegations are not sufficient to overcome the motion to dismiss. Nevertheless, for the sake of completeness of the record, the court should exercise its discretion to grant the motion to amend and take the allegations of the Second Amended Complaint into account in evaluating Officer Szempruch's defense of qualified immunity.

**Qualified Immunity**

"When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense." McClendon v. City of Columbia, 305 F.3d 314, 323 (5th Cir. 2002)(en banc). In a Rule 12(b)(6) contest, that means the Plaintiff must point to portions of his complaint "that state with factual detail and particularity the basis for the claim which necessarily includes why the defendant-official cannot successfully maintain the defense of immunity." Babb v. Dorman, 33 F.3d 472, 477 (5th Cir. 1994).

The threshold question in analyzing the defense is: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Saucier v. Katz, 121 S.Ct. 2151, 2156 (2001). The second step is to ask whether the right in question was clearly established at the time of the alleged violation. The inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition. Saucier, 121 S.Ct. at 2156. See also Anderson v. Creighton, 107 S.Ct.

3034, 3038-39 (1987).

Defendant's motion to dismiss emphasizes two points concerning the allegations contained in Plaintiff's Complaint and Second Amended Complaint: (1) Officer Szempruch arrived at the scene *after* Plaintiff had been arrested by Officer Harris and placed in the back seat of a patrol car; and (2) Officer Szempruch never touched Plaintiff or used any physical force against him. According to Officer Szempruch, mere allegations of threats, rudeness or verbal abuse do not present an actionable constitutional claim and, therefore, do not negate his immunity from this lawsuit. Defendant argues that the court need not proceed to the second step because Plaintiff has not alleged any action by Officer Szempruch that violated Plaintiff's clearly established constitutional rights. Doc. 26, p 8.

**Allegations of Verbal Abuse**

The Fifth Circuit has held that mere allegations of yelling, shouting, verbal abuse or threats by a police office do not amount to a constitutional violation. Ganesan v. James, 115 Fed.Appx. 670, 672 (5th Cir. 2004); Siglar v. Hightower, 112 F.3d 191, 193 (5th Cir. 1997); Bender v. Brumley, 1 F.3d 271, 274 fn. 4 (5th Cir. 1993); McFadden v. Lucas , 713 F.2d 143, 146 (5th Cir. 1983); Robertson v. Plano, 70 F.3d 21, 24 (5th Cir. 1995). Plaintiff has not cited a single case where mere verbal abuse or threats has been held sufficient to state a constitutional claim.

Plaintiff's reliance on Petta v. Rivera, 143 F.3d 895 (5th Cir. 1998) is misplaced. In that case, following a minor traffic violation, a police officer shot at a car containing minor

children; engaged the car in a high speed chase; pointed his gun at the driver and threatened to kill her; bludgeoned the car's window to attempt to enter the vehicle; and threatened to have the car towed while the occupants were inside. While the children were never physically touched, the officer used deadly force and extreme violence. There was evidence that the officer also made verbal threats and used epithets, but the Court did not suggest that such remarks, absent the use of excessive force, would have violated the constitution.

By contrast, in this case there is no allegation that Officer Szempruch used any excessive force or physical violence; indeed, there is no allegation of force at all. It is simply alleged that Officer Szempruch was verbally abusive, that he used inappropriate and unprofessional language, and that he threatened the use of physical force. Even if true, the allegations do not present an actionable constitutional claim.

**Miranda**

Plaintiff's allegations that Officer Szempruch failed to advise him of his Miranda rights also fails to state a claim. The exclusive remedy for an officer's failure to give the necessary warnings is exclusion of the evidence from trial. U.S. v. Patane, 542 U.S. 630, 641 (2004)(plurality opinion). A Miranda violation does not give rise to a Section 1983 claim for damages. Hannon v. Sanner, 441 F.3d 635, 636 (8th Cir. 2006); Hernandez v. Metrotransit Authority, 226 F.3d 643 (5th Cir. 2000)(unpublished).

**Eighth Amendment**

Plaintiff also makes reference to an Eighth Amendment claim against cruel and unusual punishment (Doc. 58, p. 10), but the cruel and unusual punishment provision of the Eighth Amendment applies only to convicted prisoners. Bell v. Wolfish, 441 U.S. 520, 537 fn. 16 (1979); Hare v. City of Corinth, 74 F.3d 633 (5th Cir. 1996).

**Failure to Intervene**

Plaintiff's allegations also purport to assert a claim against Officer Szempruch for failure to intervene. Plaintiff argues that police officers "have an affirmative duty to enforce the law even against their fellow officers." Doc. 58, p. 10. However, Officer Szempruch cannot be held liable for failure to intervene because the allegations of Plaintiff's Complaint and Second Amended Complaint make clear that Officer Szempruch was not present on the scene at the time of Plaintiff's stop and arrest. He did not arrive until after Plaintiff has been placed in the back seat of a patrol car. Doc. 46-4, ¶¶ 33(a) and (c). Thus, Officer Szempruch had no opportunity to stop Officer Harris' alleged use of excessive force. See Hale v. Townley, 45 F.3d 914, 919 (5th Cir. 1995). Furthermore, Plaintiff has not cited any cases to support the proposition that when Officer Szempruch arrived at the scene, he had a duty to independently investigate the validity of Officer Harris' arrest of Plaintiff. In fact, the cases appear to be to the contrary. See, e.g., Golio v. City of White Plains, 2006 WL 3199140 (S.D. N.Y. 2006); Fanelli v. Town of Harrison, 46 F.Supp.2d 254, 258 (S.D. N.Y. 1999).

**Intentional Infliction of Emotional Distress**

The elements of intentional infliction of emotional distress under Louisiana law are: (1) the conduct of defendant was extreme and outrageous; (2) the emotional distress suffered by the plaintiff was severe; and (3) the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct. White v. Monsanto, 585 So.2d 1205, 1209 (La. 1991).

While Plaintiff's Second Amended Complaint does allege the presence of the three elements of this claim [¶ 33(l)], those allegations are nothing more than legal conclusions which need not be accepted by the court as true. Fernandez-Montes, 987 F.2d at 284. The *factual* allegations made against Officer Szempruch do not rise to the level of "extreme and outrageous" conduct required to meet the standard. According to White: "The conduct must be intended or calculated to cause severe emotional distress and not just some lesser degree of fright, humiliation, embarrassment, worry, or the like." Id. at 1210. The alleged statements attributed by Plaintiff to Officer Szempruch, while crude, rough, unprofessional and uncalled for, were not so extreme or outrageous as to go beyond all possible bounds of decency and to be regarded as utterly intolerable in a civilized community. White at 1210-1211.

**Summary and Conclusion**

Plaintiff's allegations against Officer Szempruch fail to state a claim upon which relief may be granted. Officer Szempruch was not on the scene at the time of the traffic stop

and arrest, and there is no allegation that he used any physical force or violence against Plaintiff after he arrived. The allegations of verbal abuse and threats are not sufficient to overcome the defense of qualified immunity, and those allegations fall short of satisfying the demanding elements of the tort of intentional infliction of emotional distress under Louisiana law.

Accordingly;

It is recommended that the **Motion to Amend (Doc. 46)** filed by Plaintiffs be **granted**;

It is further recommended that the **Motion to Dismiss (Doc. 26)** filed by Michael S. Szempruch be **granted**, and that all claims against Michael S. Szempruch be dismissed with prejudice.

THUS DONE AND SIGNED at Shreveport, Louisiana, this 14th day of December, 2006.

_____
MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE